UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY INCORPORATED,
a foreign corporation,

       Plaintiff,

v.

BON-TEC DEVELOPMENT COMPANY, LLC
a foreign corporation, BROUGHTON
DEVELOPMENT, LLC, a foreign corporation,
and QUIRINO D'ALESSANDRO, individually,

       Defendants.

_____/

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff, NORTH AMERICAN SPECIALTY INSURANCE COMPANY INCORPORATED, hereby sues the Defendants, BON-TEC DEVELOPMENT COMPANY, BROUGHTON DEVELOPMENT, LLC and QUIRINO D'ALESSANDRO, and states as follows:

## I. JURISDICTION AND VENUE

1.    This is an action for monetary relief in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest, fees and costs, as well as for equitable relief, and this Court otherwise has jurisdiction over the subject matter hereof.

2.    Subject matter jurisdiction is based on 28 U.S.C. §1332(a)(1), diversity of citizenship. The parties are citizens of different states and the amount in controversy exceeds the jurisdictional limits of this Court.

3.    Plaintiff, NORTH AMERICAN SPECIALTY INSURANCE COMPANY INCORPORATED ("NAS"), is a corporation organized and existing under the laws of the State

CASE NO.: _____

of New Hampshire, with its principal place of business in Manchester, Hillsborough County, New Hampshire.  NAS is a citizen of the State of New Hampshire.

4.       Defendant, BON-TEC DEVELOPMENT COMPANY ("BON-TEC"), is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business in Roseville, Macomb County, Michigan.  BON-TEC is a citizen of the State of Michigan.

5.       Defendant, BROUGHTON DEVELOPMENT, LLC ("BROUGHTON"), is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business in Roseville, Macomb County, Michigan.  BROUGHTON is a citizen of the State of Michigan.

6.       Defendant, QUIRINO D'ALESSANDRO ("D'ALESSANDRO"), is an individual who resides in Delray Beach, Palm Beach County, Florida and who is otherwise *sui juris*. QUIRINO D'ALESSANDRO is a citizen of the State of Florida.

7.       Venue is proper in this Court as a substantial part of the events or omissions giving rise to NAS' claim occurred in this District and the individual Defendant resides in this jurisdiction.

8.       All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

## II. <u>GENERAL ALLEGATIONS</u>

### A. <u>The *Bonds*</u>

9.       NAS issued twenty-four (24) performance and payment bonds on behalf of several entities affiliated with Lanzo Companies, Inc. ("LCI").  Of these bonds, NAS issued the following eleven (11) performance and payment bonds (collectively, the "*Bonds*") on behalf of LCI, Lanzo Trenchless Technologies, Inc.– South ("LTTI-S"), Lanzo Trenchless Technologies, Inc.– North ("LTTI-N"), and Lanzo Construction Co. Florida ("LCCF"):

CASE NO.: _____

| BOND # | OBLIGEE | PRINCIPAL | PROJECT |
|---|---|---|---|
| 2288759 | Miami-Dade County | LTTI-S | Sanitary Sewer Repairs, RPQ/Project # M2016-031.01 |
| | | | |
| 2288773 | Douglasville-Douglas County Water and Sewer Authority | LTTI-S | Echo Lake Sewer Outfall Rehabilitation |
| | | | |
| 2288779 | City of Hollywood, FL / Broward County | LCCF | Hollywood Blvd / Royal Poinciana |
| | | | |
| 2290565 | Town of Davie, FL | LCCF | Oakes Rd Extension - Segment C / Bid # ITB-CS-19-71 / 6591 Orange Dr, Davie, FL |
| | | | |
| 2290577 | Seacoast Utility Authority | LCCF | Northlake Blvd / US-1 Water Distribution and Sewer Force Main Replacement - Phase 1 |
| | | | |
| 2290586 | Florida Keys Aqueduct Authority | LCCF | Project #2328-17 (Asphaslt Restoration for College Rd Watermain Replacement) |
| | | | |
| 2290596 | City of Fort Lauderdale, FL | LTTI-S | 12055 A-18 Basin Sanitary Sewer Rehad, Contract # 466-11799 |
| | | | |
| 2294191 | City of Wichita Falls, TX | LTTI-S | Holliday Creek Sanitary Sewer Rehabilitation Project |
| | | | |
| 2294196 | Renewable Water Resources | LCI | FY19 Gravity Sewer and Manhole Rehabilitation |
| | | | |
| 2294198 | City of Ann Arbor, MI | LTTI-N | ITB No. 4600 – High Level Trunkline Sanitary Sewer Rehab |
| | | | |
| 2297284 | City of West Palm Beach, FL | LTTI-S | West Palm Beach |

The majority of these construction projects are located within the State of Florida, primarily in Broward and Palm Beach Counties (collectively, the "Projects").

CASE NO.: _____

**B.   The *Indemnity Agreement***

10.     On or about August 17, 2018, and as a condition of inducing NAS to issue the *Bonds*, LCI, LTTI-S, LTTI-N and LCCF, along with their corporate and individual indemnitors – including D'ALESSANDRO – jointly and severally executed a *General Indemnity Agreement* (the "*Indemnity Agreement*") in favor of NAS.  A true and correct copy of the *Indemnity Agreement* is attached hereto as **Exhibit "A"** and fully incorporated herein for all purposes.

11.     Pursuant to paragraph 2 of the *Indemnity Agreement*, D'ALESSANDRO promised to "exonerate, hold harmless and indemnify the Surety from and against any and all Loss."  For purposes of the *Indemnity Agreement*, the term "Loss" is defined as follows:

> Loss ***means any liability, loss, costs, damages, attorneys' fees, consultants' fees, and other expenses, including interest, which the Surety may sustain or incur by reason of, or in consequence of, the execution of the Bonds*** (or any renewals, continuations or extensions). Loss includes but is not limited to the following: (a) sums paid or liabilities incurred in the settlement of claims; (b) expenses paid or incurred in connection with the investigation of any claims; (c) sums paid in attempting to procure a release from liability; (d) expenses paid or incurred in the prosecution or defense of any suits; (e) any judgments under the Bonds; (f) expenses paid or incurred in enforcing the terms of this Agreement; (g) sums or expenses paid or liabilities incurred in the performance of any Bonded contract or related obligation; and (h) expenses paid m recovering or attempting to recover losses or expenses paid or incurred.  ***Loss expressly includes attorney fees incurred in defending claims, protecting the Surety's interests in any bankruptcy or insolvency proceeding, arranging for the Surety's performance of its obligations, evaluating, settling, and paying claims, seeking recovery under the terms of this Agreement from the Indemnitors, and pursuing the Surety's common law rights to seek recovery of losses from others, including third parties***. The Indemnitors agree that their liability shall be construed as the liability of a compensated Surety, as broadly as the liability of the Surety is construed toward its obligee or other claimants. (Emphasis added)

12.     Pursuant to paragraph 3 of the *Indemnity Agreement*, D'ALESSANDRO, jointly and severally, agreed to, upon demand, post collateral with NAS sufficient to secure NAS against any claims asserted against the *Bond*s:

CASE NO.: _____

> Collateral Security: ***Upon demand of the Surety, the Indemnitors shall immediately deposit with the Surety a sum of money as collateral security on the Bonds***. The Surety's right to demand collateral security shall be triggered by any one of the following: (a) if it receives any notice of default, claim, or lawsuit asserting liability; (b) if it sets up a reserve to cover any investigation, demand, liability, claim asserted, suit or judgment under any of the Bonds; or (c) in the event there is a material change in the financial condition of any of the Indemnitors. ***The collateral security shall be equal to the liquidated amount stated in any claim or demand plus the amount that the Surety deems sufficient to cover the Surety's estimate of the costs and expenses to defend, investigate and adjust the claim or demand***. If any claim or demand does not expressly state a specific amount, then the collateral payment to the Surety shall be in an amount the Surety deems sufficient to protect it from Loss related to the investigation, adjustment, payment and defense of the claim. ***Any collateral deposited as security on the Bonds shall be available in the sole discretion of the Surety against any Bonds within the scope of this Agreement or for any other indebtedness of the Indemnitors to the Surety.*** (Emphasis added)

13.     Pursuant to paragraph 9 of the *Indemnity Agreement*, to the extent NAS made any payments under the *Bond*s, D'ALESSANDRO further agreed that "[a]n itemized statement of payments made by the Surety sworn to by an officer of the Surety shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety."

14.     Pursuant to paragraph 14 of the *Indemnity Agreement*, D'ALESSANDRO agreed to provide NAS with complete access to D'ALESSANDRO books, records and accounts:

> Access to Books, Records and Personal Credit: ***The Surety has the right to access the books, records, and accounts of the Indemnitors at any time upon the request of the Surety. The Surety may obtain a decree of specific performance in the event that the Indemnitors fail or refuse to provide access to the books, records, and accounts***. Any financial institution, materialman, supply house, or other person, firm, corporation or entity, doing business with the Indemnitors is authorized to furnish the Surety any information requested including, but not limited to, the status and condition of the work under contracts being performed by an Indemnitor, and payments of accounts. The Indemnitors expressly grant the Surety permission to obtain personal credit reports from consumer reporting agencies, and they consent and authorize the Surety to disclose this information to the bond agent and any representatives and agents of the Surety. (Emphasis added)

CASE NO.: _____

15.     Pursuant to paragraph 22 of the *Indemnity Agreement*, D'ALESSANDRO waived any right to a trial by jury in respect to any legal proceeding" arising out of the *Indemnity Agreement*.

### C.   Losses and Exposure under the *Bonds*

16.     As a result of claims asserted against the *Bond*s, NAS adjusted, settled or compromised claims, demands, suits or judgments upon the *Bond*s as provided for under the *Indemnity Agreement*.

17.     As of the date of this lawsuit, NAS has made the following payments to claimants in satisfaction or settlement of claims asserted against the *Bond*s, totaling Three Million One Thousand Four Hundred Seventy-Five and 51/100 Dollars ($3,001,475.51):

| BOND # | CLAIM # | CLAIMANT | PAYMENTS |
|---|---|---|---|
| 2288759 | 20201437285 | FerraTex Services & Rentals | $36,311.05 |
| | | | |
| 2288773 | 20201437286 | FerraTex Services & Rentals | $90,086.55 |
| | | | |
| 2288779 | 20201434866 | Core & Main LP | $17,192.80 |
| | 20201438446 | Ferguson Enterprises LLC | $1,973,906.26 |
| | 20201438474 | Halley Engineering Contractors, Inc. | $33,735.53 |
| | 20201439148 | Trekker Tractors, LLC | $29,054.44 |
| | | | |
| 2290565 | 20201438491 | Ferguson Underground, Inc. | $21,211.46 |
| | 20201438478 | Halley Engineering Contractors, Inc. | $11,544.59 |
| | | | |
| 2290577 | 20201438487 | Ferguson Enterprises, LLC | $323,883.71 |

CASE NO.: _____

| | | | |
|---|---|---|---|
| | | | |
| 2290586 | 20201438360 | Halley Engineering Contractors, Inc. | $205,692.54 |
| | 20201438029 | Tri-County Pavement Markings, Inc. | $52,200.00 |
| | | | |
| | 20201437320 | FerraTex Services & Rentals | $44,937.95 |
| 2290596 | 20201434398 | Global Materials Company | $58,378.54 |
| | | | |
| 2294191 | 20201451939 | BCAC Underground LLC | $90,000.00 |
| | | | |
| 2297284 | 20201436854 | FerraTex Services & Rentals | $13,340.09 |
| | | | |
| **TOTAL PAYMENTS BY NAS** | | | **$3,001,475.51** |

18.     On April 14, 2021, NAS received a wire transfer from the Indemnitors in the amount of One Thousand Four Hundred Seventy-Five and 51/100 Dollars ($1,475.51) as partial indemnification, leaving an outstanding "Loss" by NAS of Three Million and 00/100 Dollars ($3,000,000.00).

19.     NAS remains exposed to potential Losses under the *Bonds*.

20.     To date, NAS has received the following claims under the following *Payment Bonds*, which are currently undergoing investigation by NAS: (a) Sunshine Guardrail Corporation (Bond No.: 2290565) in the amount of $13,212.10; and (b) United Rentals (North America), Inc. (Bond No.: 2290565) in the amount of $4,000.83.

21.     NAS has and continues to incur loss adjustment expenses associated with its investigation, defense and/or handling of the claims under the *Bonds*.  As of the date of filing the instant lawsuit, NAS has incurred attorneys' fees and costs in the amount of One Hundred Fourteen

CASE NO.: _____

Thousand One Hundred Eighteen and 50/100 Dollars ($114,118.50), for all of which amounts D'ALESSANDRO remains obligated to NAS under the *Indemnity Agreement.*

### D. **The *Promissory Note* and Default**

22.    In early 2020, LCI, LTTI-S, LTTI-N and LCCF, along with their corporate and individual indemnitors – including D'ALESSANDRO – requested funding to satisfy outstanding obligations owed to certain lower-tier vendors in connection with the Projects.

23.    As a result of this funding request, D'ALESSANDRO – along with BON-TEC and BROUGHTON as companies controlled by D'ALESSANDRO – executed a *Promissory Note* in the amount of One Million and 00/100 Dollars ($1,000,000.00) in favor of NAS.  A true and correct copy of the *Promissory Note* is attached hereto and incorporated herein as **Exhibit "B"**.

24.    Pursuant to the *Promissory Note*, each of the Defendants, jointly and severally, agreed to the repayment of NAS under the *Promissory Note* by remittance of equal annual installments in the amount of Two Hundred Fifty-Thousand and 00/100 Dollars ($250,000.00) for a period of four (4) years, beginning on June 1, 2021:

> **SCHEDULE OF PAYMENT:** *Repayment of the amounts due Lender from the Borrowers pursuant to this Promissory Note shall be made by remittance of equal annual installments to Lender in the amount of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00) for a period of four (4) years*, with each payment being due on the 1st day of each year *beginning on June 1, 2021*, and continuing through and including June 1, 2024. (Emphasis added)

25.    Pursuant to the *Promissory Note*, if there was a default thereunder, all outstanding amounts shall become immediately due and payable upon demand, in addition to interest at a rate of five percent (5%):

> **DEFAULT PROVISIONS.**  *If a default in the payment of any Obligations occurs, all outstanding amounts hereunder shall become immediately due and payable upon demand*.  In addition, the obligations hereunder shall automatically become immediately due and payable if any of Borrower commences or has commenced against it a bankruptcy or

CASE NO.: _____

insolvency proceeding.  In addition to all other rights contained in this Note, *if a default in the payment of Obligations occurs, all outstanding Obligations between Borrower and Lender or its affiliates, shall bear interest at Five percent (5%) per annum  ("Default Rate")*.  The Default Rate shall also apply from acceleration until the Obligations or any judgment thereon is paid in full.  (Emphasis added)

26.     To date, at least two (2) months after the initial payment was due under the *Promissory Note*, none of the Defendants have issued the requisite payment, thereby defaulting under the *Promissory Note*.

**E.  Failure to Comply with Demands Under *Indemnity Agreement* and *Promissory Note***

27.     By correspondence dated May 27, 2020, August 12, 2020, and August 5, 2021, NAS (1) made demand upon D'ALESSANDRO to immediately satisfy his obligations under the *Indemnity Agreement* by indemnifying, exonerating, and collateralizing NAS against any losses incurred in connection with NAS' issuance of the *Bond*s; and (2) made demand upon the Defendants, jointly and severally, to immediately pay all outstanding amounts due to NAS under the *Promissory Note*.  True and correct copies of the May 27, 2020, August 12, 2020, and August 5, 2021 correspondence are attached hereto as **Exhibit "C"**, **Exhibit "D"**, and **Exhibit "E"**, respectively, and fully incorporated herein for all purposes.

28.     Despite such demands, the Defendants have failed and continue to fail and/or refuse to fulfill their obligations to NAS under the *Indemnity Agreement* and *Promissory Note*.

29.     NAS has retained the services of the undersigned counsel to represent its interests in this matter and is required to pay a reasonable fee for such services.

30.     Under the *Indemnity Agreement* and *Promissory Note*, each of the Defendants, jointly and severally, agreed to be liable for, and agreed that NAS is entitled to recover therefrom, any and all attorneys' fees and costs incurred in the prosecution of the instant action.

CASE NO.: _____

## COUNT I – CONTRACTUAL INDEMNIFICATION
## UNDER *INDEMNITY AGREEMENT*
### (AGAINST D'ALESSANDRO)

31.     NAS re-alleges and re-avers the allegations of paragraphs 1 through 30 hereof, as if fully set forth herein.

32.     This is an action for damages seeking relief at law under the *Indemnity Agreement*.

33.     There exists a valid and fully enforceable contract between NAS and D'ALESSANDRO, the terms of which are memorialized in the *Indemnity Agreement*.

34.     NAS has fully performed all of its obligations under the *Indemnity Agreement*.

35.     As a result of the claims against the *Bond*s, NAS has made demand upon D'ALESSANDRO under the *Indemnity Agreement* for the payment in satisfaction of the Loss and/or expenses incurred and/or to be incurred by NAS.

36.     As a proximate result of D'ALESSANDRO's breach of his obligations under the *Indemnity Agreement*, NAS has and will continue to incur substantial financial damages, including but not limited to the expenditure of funds paid: (i) in defense of the pending claims against the *Bond*s; (ii) in resolution of the pending claims against the *Bond*s; and/or (iii) in resolution of the instant litigation.

WHEREFORE, NAS respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against D'ALESSANDRO, awarding NAS its compensatory damages which have been and/or will be incurred as a result of D'ALESSANDRO's breach of the *Indemnity Agreement*, its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and such other and further relief as this Court deems necessary, just and proper.

-10-

CASE NO.: _____

**COUNT II - CONTRACTUAL EXONERATION**
**UNDER *INDEMNITY AGREEMENT***
**(AGAINST D'ALESSANDRO)**

37.     NAS re-alleges and re-avers the allegations of paragraphs 1 through 30 hereof, as if fully set forth herein.

38.     This is an action for contractual exoneration.

39.     NAS has incurred and/or will incur losses and expenses associated with its investigation, defense and/or handling of the above-described claims against the *Bond*s. Additional indebtedness under the *Indemnity Agreement* due and owing from D'ALESSANDRO to NAS will continue to accrue, including but not limited to the expenditure of funds paid: (i) in defense of the pending claims against the *Bond*s; (ii) in resolution of the pending claims against the *Bond*s; and/or (iii) in resolution of the instant litigation.

40.     Pursuant to paragraph 2 of the *Indemnity Agreement*, D'ALESSANDRO agreed to exonerate NAS from and against any losses and/or expenses incurred and/or to be incurred in connection with NAS' issuance of the *Bond*s.

41.     By virtue of the right of exoneration set forth in the *Indemnity Agreement*, NAS is entitled to D'ALESSANDRO's assets to protect NAS from any and all losses and/or expenses which may be incurred in connection with NAS' issuance of the *Bond*s.

42.     D'ALESSANDRO has failed to satisfy his obligations under the *Indemnity Agreement* by refusing to exonerate or otherwise place funds with NAS sufficient to cover the losses and/or expenses incurred and/or to be incurred under the *Bond*s.

43.     Unless the personal assets of D'ALESSANDRO are collateralized, NAS will not be adequately secured for its obligation on the *Bond*s.

WHEREFORE, NAS respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against D'ALESSANDRO, requiring D'ALESSANDRO to perform

CASE NO.: _____

under the *Indemnity Agreement* as follows: (a) exonerate NAS for its potential losses and expenses to be incurred under the *Bond*s; (b) pay and reimburse NAS for its attorneys' fees and costs incurred in prosecution of the instant action; and (c) awarding NAS such other and further relief as this Court deems necessary, just and proper.

### COUNT III - SPECIFIC PERFORMANCE / INJUNTIVE RELIEF – DEMAND FOR POSTING OF COLLATERAL UNDER INDEMNITY AGREEMENT (AGAINST D'ALESSANDRO)

44.     NAS re-alleges and re-avers the allegations of paragraphs 1 through 30 hereof, as if fully set forth herein.

45.     This is an action for specific performance seeking equitable relief.

46.     There exists a valid and fully enforceable contract between NAS and D'ALESSANDRO, the terms of which are memorialized in the *Indemnity Agreement*.

47.     NAS has fully performed all of its obligations under the *Indemnity Agreement*.

48.     Pursuant to the paragraph 3 of the *Indemnity Agreement*, D'ALESSANDRO agreed to, upon demand, post collateral with NAS sufficient to secure NAS against any claims asserted against the *Bond*s.

49.     Pursuant to the *Indemnity Agreement*, D'ALESSANDRO agreed to, upon demand, discharge NAS from liability under the *Bond*s or, in the absence of such discharge, place NAS in possession of sufficient funds to meet the NAS' liabilities.

50.     As a result of the pending claims against the *Bond*s, NAS has made demands upon D'ALESSANDRO under the *Indemnity Agreement* to discharge NAS' liabilities and/or to post collateral to cover the NAS' actual and/or potential losses and expenses.

51.     Despite such demands, D'ALESSANDRO has failed and/or refused to fully perform his obligations under the *Indemnity Agreement*, including but not limited to his obligation to discharge the bond and/or post satisfactory collateral upon demand by NAS.

CASE NO.: _____

52.     D'ALESSANDRO's failure to obtain the discharge of the *Bond*s and/or deposit the demanded collateral with NAS in accordance with the *Indemnity Agreement* has and continues to cause irreparable harm for which NAS has no adequate remedy at law, to which D'ALESSANDRO expressly agreed and understood in paragraph 3 of the *Indemnity Agreement*.

53.     NAS is fearful and apprehensive that D'ALESSANDRO is or will become financially unable to pay any amounts that may be found owing to the various claimants under the *Bond*s for which NAS may be liable, or that D'ALESSANDRO, based upon his refusal to obtain the discharge of the *Bond*s and/or deposit the demanded collateral with NAS in accordance with its demands, will sell, transfer, dispose of, lien, secure or otherwise divert or conceal their assets. NAS is also fearful and apprehensive that D'ALESSANDRO will be financially unable to pay the expenses incurred and/or to be incurred by D'ALESSANDRO, including attorneys' fees.

54.     NAS is entitled to legal and equitable relief for specific performance of D'ALESSANDRO's obligation to obtain the discharge of the *Bond*s and/or deposit the demanded collateral with NAS.

55.     In the absence of the equitable relief sought herein, NAS will suffer irreparable damage and loss because it will be forced to advance further funds in connection with the various claims on the *Bond*s without being adequately secured by D'ALESSANDRO for his obligations under the *Bond*s.

56.     By virtue of the rights under the *Indemnity Agreement*, NAS is entitled to have D'ALESSANDRO post funds or other security with NAS that is sufficient to cover the actual and/or anticipated losses and claims under the *Bond*s.

57.     Unless the relief in the nature herein requested or its equivalent is granted, NAS' equitable rights will be forever lost, depriving the NAS of adequate security for its obligations under the *Bond*s.    Further, unless the equitable relief requested below is granted,

CASE NO.: _____

D'ALESSANDRO is likely to sell, transfer, dispose, lien, secure, or otherwise, divert his assets from being used to discharge D'ALESSANDRO's obligations to NAS.

58.     NAS has a high probability of success on the merits, as NAS' investigation and resolution of the various claims under the *Bond*s has triggered D'ALESSANDRO's obligations under the *Indemnity Agreement*.

59.     The threatened injury to NAS outweighs the potential damage to D'ALESSANDRO if the relief requested herein is granted, and such relief would not be adverse to the public interest.

WHEREFORE, NAS respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against D'ALESSANDRO, granting NAS specific performance of the *Indemnity Agreement* by directing D'ALESSANDRO to either obtain the discharge of the *Bond*s or provide satisfactory collateral to NAS to cover NAS' actual and/or potential losses and expenses, awarding NAS its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and awarding NAS such other and further relief as this Court deems necessary, just and proper.

**COUNT IV - SPECIFIC PERFORMANCE / INJUNCTIVE RELIEF**
**DEMAND FOR PRODUCTION OF BOOKS AND**
**RECORDS UNDER *INDEMNITY AGREEMENT***
**(AGAINST D'ALESSANDRO)**

60.     NAS re-alleges and re-avers the allegations of paragraphs 1 through 30 hereof, as if fully set forth herein.

61.     This is an action for specific performance seeking equitable relief.

62.     There exists a valid and fully enforceable contract between NAS and D'ALESSANDRO, the terms of which are memorialized in the *Indemnity Agreement*.

63.     NAS has fully performed all of its obligations under the *Indemnity Agreement*.

CASE NO.: _____

64.     Pursuant to paragraph 14 of the *Indemnity Agreement*, D'ALESSANDRO agreed to provide NAS with complete access to D'ALESSANDRO books, records and accounts.

65.     D'ALESSANDRO has failed and/or refused to fully perform his obligations under the *Indemnity Agreement*.

66.     D'ALESSANDRO's failure to provide access to the books, records, and accounts in accordance with the *Indemnity Agreement,* has and continues to cause irreparable harm for which NAS has no adequate remedy at law.

67.     NAS is entitled to equitable relief for specific performance of the D'ALESSANDRO's obligations to produce his books, records, and accounts.

WHEREFORE, NAS respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against D'ALESSANDRO, granting NAS specific performance of the *Indemnity Agreement* by directing D'ALESSANDRO to immediately produce to NAS for inspection and/or copying all of his books and records, awarding NAS its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and awarding NAS such other and further relief as this Court deems necessary, just and proper.

## <u>COUNT V - BREACH OF PROMISSORY NOTE</u>
### (AGAINST ALL DEFENDANTS)

68.     NAS re-alleges and re-avers the allegations of paragraphs 1 through 30 hereof, as if fully set forth herein.

69.     There exists a valid and fully enforceable *Promissory Note* between NAS and the Defendants in the amount of One Million and 00/100 Dollars ($1,000,000.00).

70.     Defendants agreed that they would make payments as set forth in the *Promissory Note*, and that if any amount payable to NAS was not paid when due, the Defendants shall be in default of same.

CASE NO.: _____

71.     Defendants have failed to pay the *Promissory Note* when due, despite demand from NAS thereunder.

72.     After all credits and setoffs, Defendants owe NAS the sum of One Million and 00/100 Dollars ($1,000,000.00), plus accrued interest, costs and attorneys' fees.

WHEREFORE, NAS respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants, awarding NAS its compensatory damages which have been and/or will be incurred as a result of the Defendants breach of the *Promissory Note*, awarding NAS its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Promissory Note*, and awarding NAS such other and further relief as this Court deems necessary, just and proper.

## COUNT VI - MONEY LENT
### (AGAINST ALL DEFENDANTS)

73.     NAS re-alleges and re-avers the allegations of paragraphs 1 through 30 hereof, as if fully set forth herein.

74.     NAS delivered One Million and 00/100 Dollars ($1,000,000.00) to, and in favor of, the Defendants.

75.     The money that NAS delivered to the Defendants was intended as a loan.

76.     The Defendants have failed and/or refused to repay the entire loan amount to NAS.

77.     Defendants owe NAS the sum of One Million and 00/100 Dollars ($1,000,000.00) that is due with interest for money lent by NAS to Defendants.

WHEREFORE, NAS respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants, awarding NAS its compensatory damages and such other and further relief as this Court deems necessary, just and proper.

CASE NO.: _____

DATED this <u>20th</u> day of August 2021.

**ETCHEVERRY HARRISON LLP**
Attorneys for NAS
150 South Pine Island Road, Suite 105
Ft. Lauderdale, FL 33324
Phone: (954) 370-1681
Fax: (954) 370-1682
etcheverry@etchlaw.com
jetcheverry@etchlaw.com
service@etchlaw.com

By:    */s/ Edward Etcheverry*
       Edward Etcheverry, Fla. Bar No.: 856517
       Jeffrey S. Geller, Fla. Bar No. 0063721
       Justin Etcheverry, Fla. Bar No.: 1002742